**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel*, *et al.* | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO.  21-2980** |
| | : | |
| **JD ECKMAN INC.,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                      **May 23, 2023**

An electrical construction worker together with his union alleges an electrical company employer and two of its subcontractor construction companies violated the False Claims Act by lying about workers' real jobs so the companies could pay lower wages in large highway construction projects partially funded by the federal government over several years. They claim the three companies misclassified him and other workers performing "Electrical Work" defined in the government contracts at a significantly lower paying "Laborer" classification instead of paying them for their known actual role at the higher-paid "Lineman" classification. The electrical company employer submitted allegedly false payrolls and the construction contractors allegedly reviewed and presented the false payrolls for payment.

The three companies move to dismiss. We decline to dismiss finding the workers plead each of the three companies violated the False Claims Act. The companies also ask we dismiss or stay so the Department of Labor can first decide the complex worker classification and wage determination issues for "Electrical Work." We agree to briefly defer pleadings to find out whether the Department of Labor will exercise its agency expertise to address these complex issues under the doctrine of primary jurisdiction. We require the workers move immediately to the Department of Labor and promptly advise if the Department will issue timely findings.

I.    **Alleged Facts**[1]

Christopher Levan once worked as a construction worker for Herr Signal and Lighting Company, Inc.[2] Herr Company provides electrical construction services throughout Pennsylvania and sub-contracts with two general contractors who have experience working with union electrical subcontractors—JD Eckman Inc. and Kinsley Construction, Inc.[3]

*The construction companies contract with PennDOT.*

The Pennsylvania Department of Transportation regularly signs contracts with private construction companies to perform highway improvement projects throughout Pennsylvania—known as public contracts.[4] PennDOT funds these projects in part, and receives grants from the United States Department of Transportation, including the Federal Highway Administration, to pay for these projects.[5] Congress, through the Federal-Aid Highway Act and the Davis-Bacon Act, mandates workers who perform work on United States Department of Transportation funded highway contracts must be paid at least the prevailing wages for the trade and type of work performed.[6] The Department of Labor sets the prevailing wage rates in its "Wage Determinations" for a given locality.[7]

PennDOT's public contracts incorporate the Davis-Bacon Act's prevailing wage requirements, the Department of Labor's applicable Wage Determinations, and requirements to provide PennDOT accurate weekly certified payrolls as material terms of the public contracts.[8]

Herr Company, JD Eckman, and Kinsley devote substantial portions of their construction businesses to these types of government-funded highway improvement projects.[9] Each construction company signed public contracts with PennDOT. These public contracts contain a "scope of work" provision including "Electrical Work" defined by the parties as "installing electrical conduit, installing electrical cabinets and junction boxes, installing magnetic speed and

weight measurement loops, installing and setting street light and electrical poles, installing and removing traffic signals and associated equipment, cutting, pulling and terminating wires, and performing related wiring tasks with respect to all such devices."[10] The prevailing industry practice on federal highway projects is only Journeymen Lineman may perform Electrical Work.[11]

### *JD Eckman contracts with PennDOT and subcontracts with Herr Company.*

PennDOT awarded JD Eckman a general contract for $12,747,687.00 for a multi-year highway and bridge improvement project at State Route 222 in Lancaster County on October 9, 2012.[12] The Department of Transportation and the Federal Highway Administration funded the contract in part through federal funds, and PennDOT funded it in part.[13] The contract included the Davis-Bacon Act stipulations, and the public contract also contained a Wage Determination defining the wage and benefit rates for the classification of trade workers.[14]

JD Eckman then signed a subcontract with Mr. Levan's employer Herr Company in early 2013 through which Herr Company agreed to perform the defined Electrical Work on the Route 222 job for $1,121,969.00.[15] Herr Company agreed to complete various tasks including "the replacement and installation of streetlights, traffic signals, electrical junction boxes, electrical conduit, and other related wiring tasks."[16] Mr. Levan and his Union (collectively "Union") alleges "[t]his work is plainly Electrical Work" and must be classified and paid at the Lineman rate.[17]

JD Eckman also signed at least thirteen other contracts for similar PennDOT/Department of Transportation funded highway projects from 2012 through 2018.[18] These contracts also contained Davis-Bacon Act stipulations.[19] JD Eckman then signed subcontracts with Herr Company for each of these contracts where Herr Company agreed to perform the defined Electrical Work on each of the jobs.[20] This defined Electrical Work included tasks such as the installation of utility poles, electrical junction boxes, traffic signals, cameras, electrical conduit, and perform

other related electrical wiring tasks.[21] The Union alleges "[t]his work is plainly Electrical Work" and must be classified and paid at the applicable Lineman rate.[22]

These thirteen JD Eckman-Herr Company subcontracts also incorporated the Davis-Bacon Act requirements for the classification of trade workers.[23] Herr Company agreed to pay the Davis-Bacon Act prevailing wages, submit weekly certified payrolls to JD Eckman and/or PennDOT, and certify it paid each of its employees in accord with the classification and type of work they performed.[24]

But Herr Company classified eighty percent of the work performed by its employees— other than the sole foreman on the subcontracts—at the Laborer rate.[25] The Laborer rate is "significantly lower than" (or about two-thirds of) the Lineman rate.[26] The Laborer classification is typically the lowest paying wage classification in the construction industry.[27] Herr Company submitted its payrolls to JD Eckman, or at least readily accessible by JD Eckman, but JD Eckman disregarded them.[28]

Mr. Levan worked on an unknown number of the JD Eckman-Herr Company subcontracts.[29] He estimates, based on his experience, about sixty percent of the work he performed should have been classified as Lineman work.[30] But his paystubs show Herr Company paid him at the Laborer rate for over eighty percent of his work on the JD Eckman-Herr Company subcontract jobs.[31] So the Union contends Herr Company misclassified and underpaid Mr. Levan (and other employees) on forty percent of all the work performed under the JD Eckman-Herr Company subcontracts.[32]

The Herr Company falsified its payrolls "because the clear majority of the work" performed on the JD Eckman-Herr Company subcontract "(at least [sixty percent] of the work performed by non-foreman employees) was Electrical Work, which should have been classified

and paid at the Lineman rate, but was instead classified and paid at the much lower, Laborer (or occasionally, at the also-lower Operating Engineer) rate."[33]

The Herr Company knew the falsity of its payrolls because it knew the work performed constituted Electrical Work and should have been classified and paid at the Lineman rate.[34] JD Eckman "knew or showed reckless disregard for the falsity" of Herr Company's payrolls because JD Eckman, among other things:

- subcontracted out discrete Electrical Work to Herr Company;

- hired Herr Company as an electrical construction contractor;

- knew Electrical Work needed to be classified and paid at the Lineman classification, not the lower-paying Laborer classification;

- knew the Davis-Bacon Act requirements;

- received Herr Company's false payrolls; and

- "did nothing to correct Herr [Company]'s glaring falsifications and underpayments."[35]

But JD Eckman still ratified and represented Herr Company's certified payrolls as "correct and complete" when seeking payment from the United States and insisted it and the Herr Company properly classified and paid the workers like Mr. Levan consistent with the type of work they performed.[36]

### Kinsley contracts with PennDOT and subcontracts to Herr Company.

PennDOT and Kinsley signed a general contract as of June 1, 2015 for $937,414.00 for a highway improvement project to occur on State Route 3020 in Dauphin County.[37] The Department of Transportation and the Federal Highway Administration funded the Route 3020 contract in part through federal funds, and PennDOT funded it in part.[38] The PennDOT-Kinsley contract included the Davis-Bacon Act stipulations, and it contained the wage and benefit rates for the classification of trade workers.[39]

Kinsley then signed a subcontract with Herr Company in June 2015 where Herr Company agreed to perform defined "Electrical Work" for the Route 3020 highway improvement project.[40] This defined Electrical Work included the installation of traffic signal equipment and controller assemblies, video detection and emergency preemption detection systems, a wireless communication system, adaptive traffic control system, and related electrical wiring tasks.[41] The Union alleges these services are "plainly" Electrical Work and Kinsley and the Herr Company should have classified and paid the workers at the Lineman rate.[42]

Kinsley signed at least ten other contracts for similar PennDOT/Department of Transportation funded highway projects from 2013 through 2017.[43] These contracts also contained Davis-Bacon Act stipulations.[44] Kinsley then signed subcontracts with Herr Company in each of these contracts where Herr Company agreed to perform the defined Electrical Work on the jobs.[45] The electrical tasks included the installation of utility poles, electrical junction boxes, traffic signals, cameras, electrical conduit, and perform related electrical wiring tasks.[46] The Union again alleges the services all "plainly" constituted Electrical Work and Kinsley and Herr Company should have classified and paid the workers at the applicable Lineman rate.[47]

But Herr Company, as it did under the JD Eckman subcontracts, classified about eighty percent of the work performed by its employees—other than the sole foreman on the subcontracts—at the lower Laborer rate.[48] Herr Company submitted its payrolls to Kinsley, or at least made them readily accessible by Kinsley, but Kinsley disregarded them.[49]

Mr. Levan worked on an unknown number of the Kinsley-Herr Company subcontracts.[50] He estimates, based on his experience, about sixty percent of the work he performed should have been classified as Lineman work.[51] But his paystubs show Herr Company paid him at the lower Laborer rate for over eighty percent of his work on the Kinsley-Herr Company subcontract jobs.[52]

So, like under the JD Eckman-Herr Company subcontracts, the Union claims Herr Company misclassified and underpaid the employees on forty percent of all the work performed under the Kinsley-Herr Company subcontracts.[53]

Herr Company falsified these payrolls on Kinsley subcontracts "because the clear majority of the work" (at least sixty percent) performed under the Kinsley-Herr Company subcontracts constituted the defined Electrical Work for which these company should have classified and paid the workers at the Lineman rate, but instead classified and paid the workers at the much lower, Laborer (or occasionally, at the also-lower Operating Engineer) rate.[54]

Herr Company falsified its payrolls knowing the work performed under the Kinsley-Herr Company subcontracts constituted the defined Electrical Work and the companies should have classified and paid the workers at the Lineman rate, not the lower Laborer rate.[55] And Kinsley "knew or showed reckless disregard for the falsity" of the payrolls because, among other things, Kinsley:

- subcontracted out discrete electrical work to Herr Company;

- hired Herr Company as an electrical construction contractor;

- knew electrical work needed to be classified and paid at the Lineman classification, not the lower-paying Laborer classification;

- knew of the Davis-Bacon Act requirements;

- received Herr Company's false certified payrolls; and

- "did nothing to correct Herr [Company]'s glaring falsification and underpayment" of the "clearly Lineman work[.]"[56]

But Kinsley still ratified and represented the correctness and completeness of Herr Company's certified payrolls in its certified payrolls submitted to obtain government funding. Kinsley also misrepresented the Herr Company properly classified and paid the workers consistent with the type of work they performed.[57]

7

Both JD Eckman and Kinsley "were well aware of the union electrical industry classification practices and also were well aware that those industry practices were drastically different from the practices of Herr [Company]" on the various PennDOT contracts.[58] But JD Eckman and Kinsley knowingly subcontracted out Electrical Work to Herr Company (an electrical contractor, as the name suggests) and (at the very least) recklessly disregarded whether Herr Company provided accurate certified payrolls despite their "non-delegable duty" under the contracts and the Davis-Bacon Act to ensure they and their subcontractors properly classified and paid the construction workers on these projects.[59]

### Herr Company contracts directly with PennDOT.

PennDOT awarded Herr Company a general contract on October 12, 2017 in the amount of $304,815.90 for a highway improvement project at the intersection of Pennsylvania Routes 462 and 3046 in York County.[60] The Department of Transportation and the Federal Highway Administration funded the contract in part through federal funds, and PennDOT funded it in part.[61] The contract included the Davis-Bacon Act stipulations.[62] And it contained a Wage Determination setting forth the wage and benefit rates for the classification of trade workers.[63] Herr Company agreed, through the contract, to pay the applicable Davis-Bacon Act prevailing wages and submit weekly certified payrolls to PennDOT.[64]

Electrical Work "constituted most of the total work performed under" on the Routes 462 and 3046 job.[65] For example, Herr Company replaced traffic signals and poles.[66] The Union alleges this type of work is "plainly Electrical Work" and required payment at the Lineman rate.[67] But "[d]espite the overwhelming electrical nature of the contract," Herr Company paid its non-foreman employees for "a large majority" (approximately eighty percent) of the construction work performed at the Laborer, not Lineman rate.[68] Herr Company paid the Lineman rate for only a

fraction (about ten percent or less) of the hours performed by the non-foreman employees.[69] Herr Company paid the higher Lineman classification rate only for the task of wire pulling "even though Herr [Company] knew [] wire pulling was only one of many tasks that constituted Electrical Work which was required to be classified and paid as Lineman work."[70] Herr Company listed and submitted the Laborer classification on its certified payrolls to PennDOT.[71]

Herr Company falsified its payrolls because most of the work (at least sixty percent) performed under the contract constituted Electrical Work, which should have been classified and paid at the Lineman rate, but was instead classified and paid at the lower Laborer (or occasionally at the also-lower Operating Engineer) rate.[72] The Herr Company knew the falsity of its certified payrolls or showed "reckless disregard for the falsity" of the payrolls because:

- Herr Company has experience as an electrical construction contractor on publicly funded projects and knew of Davis-Bacon Act requirements;

- Herr Company knew the prevailing industry practice of what tasks constitute Electrical Work which had to be classified and paid at the Lineman rate, not the Laborer rate; and

- Herr Company knew the work tasks its employees performed on its contracts constituted Electrical Work for which it should have classified and paid its employees as Lineman, not Laborers.[73]

## II.    Analysis

The Union sued the three construction companies for violating the False Claims Act because Herr Company intentionally misclassified and falsified certified payrolls to underpay for Electrical Work, which JD Eckman and Kinsley ultimately "rubber-stamp[ed]".[74] The Union claims the three construction companies "knowingly made or used and caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B)."[75]

JD Eckman together with Kinsley, and separately Herr Company, now move to dismiss the Union's amended Complaint.[76] The construction companies argue: (1) the Union fails to plead

fraud under the False Claims Act with the requisite specificity; and, (2) if we do not dismiss with prejudice due to the lack of specificity pleaded, then we should dismiss pending referral to the Department of Labor which has primary jurisdiction over this matter.[77] The Union responds: (1) it states a claim for fraud under the False Claims Act with the requisite specificity; and (2) we should not refer the classification issues to the Department of Labor as it would be futile because the Department would not accept the referral.[78]

We begin with the statutory mandate. Congress enacted the False Claims Act to protect government funds and property from fraudulent claims.[79] Congress, through the False Claims Act, imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]"[80] The Union must prove: "causation, falsity, scienter, and—at least where liability is based on a false certification—materiality."[81]

Congress, through the Davis-Bacon Act, requires government construction contracts to contain a provision stating, "the minimum wages to be paid various classes of laborers and mechanics . . . shall be based on the wages the Secretary of Labor determines to be prevailing" in the locality.[82] This determination is based on the tasks the workers perform.[83] So the Secretary of the Department of Labor "has exclusive authority to establish minimum wages for particular classifications of laborers and mechanics in particular localities and to define the work that is included within each classification where there is any ambiguity."[84]

False Claims Act claims may be preempted in cases involving specific factual issues which are reserved for agency discretion or involve an underlying regulatory scheme addressing identical fraudulent activity.[85] Judges Ellis and Stengel, along with others, have held False Claims Act suits based on Davis-Bacon Act violations are preempted when the assessment of falsity turns on

whether the employer misclassified its employees—a factual determination reserved for the Department of Labor.[86]

So we first determine whether the Union states a False Claims Act claim, and second whether we have jurisdiction to address the Union's claim under the False Claims Act, or if the issue of worker classifications and wage determinations must first be referred to the Department of Labor under the doctrine of primary jurisdiction.[87] We find the Union states a claim. We then find the issues surrounding worker classifications and wage determinations must at least first be referred to the Department of Labor.

### A. The Union pleads a False Claims Act claim under section 3729(a)(1)(B) with particularity.

Herr Company, JD Eckman, and Kinsley argue we should dismiss the amended Complaint because the Union fails to plead fraud with the requisite specificity.[88] The Union responds it pleaded "particular details of a scheme to submit false payments" and "reliable indicia that lead to a strong inference that claims were actually submitted" as required by our Court of Appeals in *Foglia v. Renal Ventures Management.*[89]

To state a claim under the False Claims Act the Union must show: "(1) [the defendant] made, used, or caused to be made or used, a false record or statement; (2) the defendant knew the statement to be false[;] and (3) the statement was material to a false or fraudulent claim."[90] Claims under the False Claims Act are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims.[91]Our Court of Appeals in *Foglia v. Renal Ventures Management* adopted the pleading standard detailed by the Court of Appeals for the Fifth Circuit for determining whether false claims have been submitted.[92]  To survive a motion to dismiss, the Union must plead "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."[93] This "place[s] the defendants

on notice of the precise misconduct with which they are charged" and also "safeguard[s] [them] against spurious charges of immoral and fraudulent behavior."[94]

### 1.  The Union pleads fraud.

The Union and Mr. Levan must support their fraud allegations under Rule 9(b) with all the essential detailed factual circumstances of "the first paragraph of any newspaper story" which is, "who, what, when, where and how."[95] But our Court of Appeals has adopted a "flexible" alternative if the Union and Mr. Levan cannot plead particularized evidence of a false claim, holding they need not allege "date, place or time" if they can "inject[ ]precision and some measure of substantiation" by some other means into their allegations of fraud.[96] But "[d]escribing a mere opportunity for fraud will not suffice."[97]

All three construction companies claim the Union and Mr. Levan have fallen "woefully short" in clearing the heightened pleading standard for fraud.[98] They contend there is no "who, what, when, and where" detailing the alleged fraud.[99] We disagree. The Union establishes the "what" and "how" elements of fraud by alleging Herr Company submitted fraudulent certified payrolls with the intention the false documents be material to the government's decision to pay or approve its false claims.[100] And JD Eckman and Kinsley "chose to ignore" the fraudulent payrolls and "affirmed that Herr [Company's] certified payrolls were correct and accurate, and that each of Herr [Company's] employees were paid and classified in accordance with their proper [Davis-Bacon Act] classification."[101] The Union pleads specific examples of this conduct.[102]

Although the Union and Mr. Levan do not specify several dates in the amended Complaint, the "when" is adequately alleged as we know the alleged violation occurred from 2012 through 2018.[103] For conduct occurring over a long period of time, it is sufficient to plead the general time frame the conduct allegedly occurred, what contracts were involved, and what claims were false.[104]

And the Union specified the "where" by identifying the relevant counties the fraud occurred during specific government projects including in Cumberland, Lancaster, Dauphin, York, Adams, and Perry Counties.[105] The amended Complaint also lists the twenty-five specific contract numbers at issue.[106] And it identifies Mr. Levan as one of the specific construction workers as being misclassified and underpaid.[107] The amended Complaint specifies the estimated number of misclassified work Herr Company certified in its weekly certified payment forms it submitted to the federal government, which Kinsley and JD Eckman then submitted to the relevant contracting agencies.[108] And the Union further specifies Herr Company only classified and paid its employees for Electrical Work at the Lineman rate "only in the very narrow circumstance where the worker engaged in the task of pulling wire."[109]

The Union's allegations withstand a motion to dismiss on grounds of failure to plead with particularity at this stage. The Union alleges with particularity Herr Company, JD Eckman, and Kinsley fraudulently submitted certified payrolls intending to induce the government to pay the false claims for certain projects between them and the government. These allegations, along with the names and dates provided, sufficiently describe the allegedly fraudulent scheme.

### 2. The Union pleads JD Eckman and Kinsley caused claims to be presented.

JD Eckman and Kinsley separately argue the Union fails to sufficiently plead they *caused* false claims to actually be submitted to the United States government.[110] They argue the "mere fact" Congress, through the Davis-Bacon Act, provides "[t]he prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor" does not mean, for False Claims Act purposes, they "caused" Herr Company's allegedly falsified payrolls.[111]

Congress, through the False Claims Act, imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or

fraudulent claim[.]"[112] Liability can be established by the "express false certifications" made, "or through the so-called 'implied certification' theory, which 'holds a defendant liable for violating the 'continuing duty to comply with the regulations on which payment is conditioned.'"[113]

The Union does more than rely on the "mere fact" JD Eckman and Kinsley had a non-delegable duty under the Davis-Bacon Act and the contract to ensure all work under the sub-contract were classified and paid correctly. The Union pleaded JD Eckman and Kinsley caused Herr Company's false statements by knowingly subcontracting Electrical Work to Herr Company and then submitting weekly the fraudulent certified payrolls to the federal government, which we take as true at this stage of the proceeding.[114] The Union further pleaded JD Eckman and Kinsley knowingly and recklessly disregarded the veracity of Herr Company's worker classifications in the certified payrolls, in violation of their nondelegable duty under the contracts and the Davis-Bacon Act to ensure proper worker classification.[115] The Union specifically alleges JD Eckman and Kinsley "caused false statements" because they submitted weekly certified payrolls to the federal government, for each of the projects cited, and stated Herr Company's certified payrolls were "complete and accurate," and the "wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract," and "the classifications set forth therein for each laborer or mechanic conform with the work he performed."[116]

The Union sufficiently pleads JD Eckman and Kinsley caused the claims to be presented.

### 3.  The Union pleads JD Eckman's and Kinsley's requisite intent.

JD Eckman and Kinsley separately argue the Union fails to plead scienter under the False Claims Act.[117] They argue the only attempt to plead scienter is the Union's reference to their "industry experience and a bald assertion that the [general contractors] knew that the work was

Electrical Work and, thus, [they] should have corrected the alleged misclassification."[118] The Union argues it pleaded sufficient facts in support of the scienter requirement.[119] We agree.

Our Supreme Court explained in *Universal Health Services*: "[t]he [False Claims Act's] scienter requirement defines 'knowing' and 'knowingly' to mean that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.'"[120]

The Union pleaded facts to meet the *Universal Health Services* standard. It alleges JD Eckman "knew or showed reckless disregard for the falsity" of Herr Company's payrolls because JD Eckman, among other things, subcontracted out discrete Electrical Work to Herr Company; knew Herr Company as an electrical construction contractor; knew Electrical Work needed to be classified and paid at the Lineman classification, not the lower-paying Laborer classification; knew the Davis-Bacon Act requirements; received Herr Company's false payrolls; and "did nothing to correct Herr [Company's] glaring falsifications and underpayments."[121] And it alleges Kinsley "knew or showed reckless disregard for the falsity" of the payrolls because, among other things, Kinsley subcontracted out discrete Electrical Work to Herr Company; knew Herr Company as an electrical construction contractor; knew Electrical Work needed to be classified and paid at the Lineman classification, not the lower-paying Laborer classification; knew of the Davis-Bacon Act requirements; received Herr [Company's] false certified payrolls; and "did nothing to correct Herr's glaring falsification and underpayment" of the "clearly Lineman work[.]"[122]

The Union will need evidence to support their claims JD Eckman and Kinsley knew of the false payment or acted with a reckless disregard for their falsity. But, for today, the claim survives a motion to dismiss.

**B.  We defer to the Department of Labor for a short period.**

We next determine whether we should resolve these cognizable claims in the first instance or if the issue of worker classifications and wage determinations must first be referred to the Department of Labor under the doctrine of primary jurisdiction.[123] The issue as to whether we have jurisdiction over the Union's claims concerns whether the claims' false or fraudulent nature would require us to decide a matter committed to the discretion of an administrative agency.[124]

The primary jurisdiction doctrine allows us "to refer a matter to the relevant agency whenever enforcement of the claim requires the resolution of issues which have been placed within the special competence of an administrative body."[125] The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]"[126] As directed by our Court of Appeals in *Baykeeper v. NL Industries, Inc.*, where the doctrine applies, the "judicial process is suspended"— ***not*** divested of jurisdiction.[127] The primary jurisdiction doctrine is prudential and does not "implicate[] the subject matter jurisdiction of the federal courts."[128] The doctrine is "better viewed as 'judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. Court jurisdiction is not thereby ousted, but only postponed.'"[129] And "the doctrine of primary jurisdiction requires only that the court refer certain discrete issues raised in the case, in the first instance, to the appropriate administrative agency."[130] Referral of the issue to the administrative agency does not deprive us of jurisdiction—we have "discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice."[131]

16

"[T]he doctrine of primary jurisdiction is not a doctrine of futility[.]"[132] We consider "whether invoking primary jurisdiction would needlessly delay the resolution of claims."[133] "[P]rimary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make."[134] So we determine whether invoking primary jurisdiction would be judicially effective.[135] While "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," our Court of Appeals in *Baykeeper* outlined a four-factor test to determine whether the doctrine of primary jurisdiction is applicable:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.[136]

If these factors weigh in favor of the applicability of the doctrine, we can either dismiss the matter without prejudice or stay its proceedings to give the parties a reasonable opportunity to refer the matter to an agency for an administrative ruling.[137] Referral is often appropriate where an issue involves "technical and intricate questions of fact and policy that Congress has assigned to a specific agency."[138]

Almost thirty years ago in *United States ex. Rel. Windsor v. DynCorp, Inc*., Judge Ellis found the Department of Labor should first consider whether an employer intentionally misclassified and, as a result, underpaid certain workers, classifying them as "Laborers," rather than "Electricians" or "Carpenters[.]"[139] He reasoned "the responsibility for resolving such disputes rests not with the courts, but with the Department of Labor."[140] Judge Ellis recognized how the employee "claims not that [the employer] misrepresented the amount its workers were actually paid, but rather that its classification of certain workers was erroneous" and "[s]uch disputes are appropriately relegated to the Department of Labor."[141]

Judge Stengel more recently considered whether he should first address a union's claims under the Davis-Bacon Act and the False Claims Act, or if the Department of Labor had primary jurisdiction over a union's claim asserting an employer misclassified and underpaid its employees for purposes of wage determinations in *United States ex rel. International Brotherhood of Electrical Worked, Local Union No. 98 v. Farfield Company* in the context of a motion to dismiss.[142] Judge Stengel first denied the motion finding although the dispute concerned whether the employer properly classified its employees, the "classifications are not complex and were previously defined by the department of labor with regard to the work performed."[143]

But, years later, the union in *Farfield* sought to offer three electrical trade industry experts as witnesses at trial.[144] Judge Stengel found "this need for expert testimony [] suggests that the classifications are complex" and "[i]t follows that this issue is properly left to the [Department of Labor] and the doctrine of primary jurisdiction is applicable."[145] Judge Stengel found support in the doctrine's applicability based on the four *Baykeeper* factors given: (1) worker classifications and wage determinations are technical policy considerations in the Department of Labor's field of expertise; (2) the issue of worker classifications is within the agency's discretion, and is expressly reserved for the Secretary of the Department; (3) complex classifications are involved, which is highlighted by the need for expert testimony, so there is a substantial danger of inconsistent rulings; and (4) although the Department has ruled, generally, on these classifications, a previous application has not been made in this specific case.[146] So Judge Stengel found it appropriate to defer to the primary jurisdiction of the Department of Labor.[147] Judge Stengel stayed rather than dismissed the case given the extensive completed discovery.[148]

Over a year after Judge Stengel's September 26, 2017 Order to stay the *Farfield* matter, and after assignment to our calendar, we ordered the parties file a joint status report, where the

union then conceded it "has not yet referred this matter to the Department of Labor."[149] We ordered the Union to promptly refer the matter to the Department of Labor.[150]

The Union then represented the Department declined referral primarily because of "the passage of time and the significant resources that would be necessary to investigate a closed contract."[151] The Department explained:

- when it received the referral in December 2018 "performance under the contract had been completed and the contract had been closed for over ten years;"

- the Wage and Hour Division "resources and workload *generally* do not permit investigations into closed contracts";

- "[r]equesting the payment of back wages after performance of a contract has been completed, and when no funds remain to be withheld on the contract, is *typically* not feasible";

- "where contract payments have not been withheld, a six-year statute of limitations for enforcement of Davis-Bacon Related Act requirements typically would apply";

- the Wage and Hour Division "cannot determine whether the workers in question were misclassified and underpaid without an investigation concerning the specific work they performed, and [the Wage and Hour Division] is not in a position to conduct such an investigation *under the circumstances present in the case*";

- "[a] precise wage/classification determination would be challenging given the significant passage of time in this case"; because of the contradictory evidence presented by the parties "any investigation *in this case* likely would be highly fact-intensive" such that the Department "presumably would have to invest significant resources and time to make a determination such as would be required by the Referral"

- the Wage and Hour Division investigated the employer's compliance with the Davis-Bacon Act on the contracts in Fall 2004, "however, not only did that investigation not result in any finding of misclassification, conducting a wage/classification determination at this juncture would require an entirely new investigation (including review of additional documentation and witness interviews) that [the Wage and Hour Division] is ill-positioned to conduct . . ."; and

- "it is within the discretion of the [Wage and Hour Division] Administrator to decide whether to enforce Davis-Bacon labor standards *in a particular case*."[152]

We then considered the effect of the Department of Labor declining the referral, and found we had jurisdiction to adjudicate the applicable worker classification after we referred it to the Department, and the Department to decline the referral.[153] Our Court of Appeals agreed.[154]

Herr Company, JD Eckman, and Kinsley today argue the Department of Labor should decide whether "most of the total work performed" under any of the twenty-five contracts at issue is "Electrical Work" or whether the "Electrical Work" described by the Union is even supposed to be paid at the Lineman rate.[155] The Union counters we should not refer this matter to the Department of Labor—not because the Department *should not* decide these issues, but because the Department *will not* decide these issues.[156] The Union contends—since all the contracts at issue are closed—such a referral would be futile given the Department's "official position" based on its denial in the *Farfield* case refusing to accept a referral relating to Davis-Bacon Act misclassifications on a closed contract.[157]

The Union defines Electrical Work as "installing electrical conduit, installing electrical cabinets and junction boxes, installing magnetic speed and weight measurement loops, installing and setting street light and electrical poles, installing and removing traffic signals and associated equipment, cutting, pulling and terminating wires, and performing related wiring tasks with respect to all such devices."[158] But the Union does not reference a definition provided from the Department of Labor as to what constitutes Electrical Work. Although the Union claims "the clear majority of the work" performed under the twenty-five contracts constituted Electrical Work, it offers no guidance as to how we would define the scope of the worker classification on these twenty-five different projects, which were performed at different times and locations and with different workers without the need for expert testimony. No one disputes these classification issues appear complex. No one offers a basis to conclude a fact finder can understand these types of work

assignments under an "Electrical Work" definition without expert testimony. We find this issue is properly left to the Department of Labor in the first instance.

We also find support in the doctrine's guidance after applying the four *Baykeeper* factors: (1) worker classifications and wage determinations are technical policy considerations in the Department of Labor's field of expertise; (2) the issue of worker classifications is within the agency's discretion, and is expressly reserved for the Secretary of the Department; (3) the complexity of the classifications—which no one disputes—poses a substantial danger of inconsistent rulings; and (4) the Department has not ruled on these classifications in this specific case.

The Union's allegations indisputably involve a complex classification dispute. These classification disputes are similar to those in *DynCorp* and *Farfield* where both Judges Ellis and Stengel found the disputes to be properly sent to the Department of Labor for a short period. The Union does not argue it will not adduce expert testimony to resolve these issues. The Union instead baldly argues referral here would be futile given the Department's refusal to accept the referral in *Farfield*.[159] The Union contends "[t]here is no reason to think [the Department's] policy has changed or would be applied by the agency any differently in this matter."[160] And we now have "the benefit of knowing early in the litigation the [Department's] official position on accepting referrals relating to [the Davis-Bacon Act] misclassification issues on closed contracts: it does not accept them."[161] So the Union reasons "[s]ince futility is now clear" we "should decline to exercise [our] discretionary power to refer the issue of [Davis-Bacon Act] worker classification issues to the [Department] and instead assert full active jurisdiction of the matter[.]"[162]

We disagree with this Union's assumption. The Department declined to act on our referral in *Farfield* based on the facts of the specific case and related concerns for investigatory resources

21

at the time of the referral, not because of some "official position." The Department did not say the Wage and Hour Division "always" declines to investigate closed contracts but instead its "resources and workload ***generally*** do not permit investigations into closed contracts" and it "***typically***" is not feasible.[163] It further explained it had not been "in a position to conduct such an investigation ***under the circumstances present in the case***."[164] Nowhere does the Department cite an official policy. And the Union does not cite, and we are not aware of, judges relying on the Department's letter in *Farfield* from over four years ago to decline a referral to the Department based on futility today.

Absent referral to the Department or a refusal to take the referral, we cannot determine whether such a referral will be futile based solely on the Department's position under different fact circumstances in *Farfield*. And our referral of the issue to the administrative agency does not deprive us of jurisdiction—we retain our jurisdiction even if the Department declines our referral.[165] We require counsel to promptly move for referral and submit status reports to ensure progress.

The doctrine of primary jurisdiction counsels we refer the matter to the Department of Labor for an early determination.

### C.  We stay for a short period pending the Department's review.

We now must determine whether to stay the proceedings or dismiss the claim without prejudice.[166] We may stay proceedings, but also can dismiss a claim without prejudice if the parties would not be "unfairly disadvantaged" by such a dismissal.[167]

The Union would be unfairly disadvantaged if we dismissed its misclassification claim without prejudice instead of staying its claims. "A plaintiff seeking relief under the False Claims Act must file his or her claim fewer than six years after the alleged violation took place."[168] The

claims for misclassification date back to 2012 through 2018.[169] The statute of limitations may prevent the Union from re-filing if we dismiss the misclassification claim.

We instead temporarily stay our progress pending referral to the Department of Labor to resolve the issues of worker classifications and wage determinations. We retain jurisdiction to adjudicate the applicable worker classifications after the Union immediately refers the case to the Department of Labor even if the Department of Labor declines the referral.[170] We require the parties produce required disclosures including payroll records consistent with Rule 26(a)(1)(A) within the next thirty days.  We intend to timely move these claims to resolution. And since we are mindful we must consider "whether invoking primary jurisdiction would needlessly delay the resolution of claims" we may withdraw the referral should the Department of Labor be unable to timely address the parties' concerns.[171]

### III.   Conclusion

We deny the companies' Motions to dismiss as the Union properly pleaded a False Claims Act claim against each of the three companies. But we will stay further pleadings and progress other than Rule 26 disclosures. The Union and Mr. Levan must immediately refer this matter which raises the issue of complex worker classification and wage determination to the Department of Labor to resolve the issues of worker classification and wage determination under the Davis-Bacon Act. The Union and Mr. Levan must then provide us status reports to ensure the timely resolution of this matter in our jurisdiction consistent with Federal Rule 1.

---

[1] These facts are drawn from the amended Complaint. These allegations, for purposes of Herr Company, JD Eckman, and Kinsley's Motions to dismiss, are taken as true. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). On July 2, 2021, the International Brotherhood of Electrical Workers, Local Union No. 126 and Christopher Levan on behalf of the United States sued Herr Company, JD Eckman, and Kinsley under seal and served its Complaint upon the United States. ECF Doc. No. 1. The United States requested multiple extensions to extend the seal to allow it time to elect to intervene. On February 8, 2023, the United States declined to intervene.

ECF Doc. No. 11. In the now unsealed amended Complaint, the Union and Mr. Levan sue Herr Company, JD Eckman, and Kinsley on behalf of the United States for violations of the False Claims Act.

[2] ECF Doc. No. 34 ¶ 19. Herr Company employed Mr. Levan from approximately March 2011 until June 2016. *Id.*

[3] *Id.* ¶¶ 20–22.

[4] *Id.* ¶ 27.

[5] *Id.*

[6] *Id.* ¶ 28.

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶ 23.

[10] *Id.* ¶ 5.

[11] *Id.* ¶ 6.

[12] *Id.* ¶ 42. This contract is known as PennDOT ECMS Contract No. 19461, Federal Project No. X087-295-L1CE.

[13] *Id.* ¶ 43.

[14] *Id.* ¶ 44.

[15] *Id.* ¶ 46. This contract is known as JDE-Herr Subcontract 19461.

[16] *Id.* ¶ 47.

[17] *Id.*

[18] *Id.* ¶ 49.

[19] *Id.* ¶ 51.

[20] *Id.* ¶ 52.

[21] *Id.* ¶ 53.

[22] *Id.*

[23] *Id.* ¶ 54.

[24] *Id.* ¶ 55.

[25] *Id.* ¶ 56.

[26] *Id.*

[27] *Id.* ¶ 37.

[28] *Id.* ¶ 56. Herr Company's certified payrolls provided:

> [A]ny payrolls otherwise required under this contract required to be submitted for the above [weekly work] period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract[; and] that the classifications set forth therein for each laborer or mechanic conform to the work he [or she] performed.

> *Id.* ¶ 58.

[29] *Id.* ¶ 57.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* ¶ 59.

[34] *Id.* ¶ 60.

[35] *Id.* ¶ 61.

[36] *Id.* ¶ 63.

[37] *Id.* ¶ 66. This contract is known as PennDOT ECMS Contract No. 94759, Federal Project No. X085-236-MS30.

[38] *Id.* ¶ 67.

[39] *Id.* ¶ 68.

[40] *Id.* ¶¶ 69–70.

[41] *Id.* ¶ 70.

[42] *Id.* ¶ 71.

[43] *Id.* ¶ 73.

---

[44] *Id.* ¶ 75.

[45] *Id.* ¶ 76. These ten other Kinsley-Herr subcontracts each incorporated the Davis-Bacon Act requirements for the classification of trade workers. *Id.* ¶ 80. Herr Company agreed to pay the Davis-Bacon Act prevailing wages, submit weekly certified payrolls to Kinsley and/or PennDOT, and certify it paid each of its employees in accordance with the classification and type of work they performed. *Id.* ¶ 81.

[46] *Id.* ¶ 77.

[47] *Id.* ¶ 78.

[48] *Id.* ¶ 82.

[49] *Id.* Herr Company's certified payrolls stated:

> [A]ny payrolls otherwise required under this contract required to be submitted for the above [weekly work] period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract[;and] that the classifications set forth therein for each laborer or mechanic conform to the work he [or she] performed.
>
> *Id.* ¶ 84.

[50] *Id.* ¶ 83.

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* ¶ 85.

[55] *Id.* ¶ 86.

[56] *Id.* ¶ 87.

[57] *Id.* ¶¶ 89–90.

[58] *Id.* ¶ 92.

[59] *Id.* ¶ 13.

[60] *Id.* ¶ 30. This contract is known as PennDOT ECMS Contract No. 90029, Federal Project No. X084-359-Z230. *Id.*

[61] *Id.* ¶ 31.

[62] *Id*. ¶ 32.

[63] *Id*. ¶ 34.

[64] *Id*. ¶ 35.

[65] *Id*. ¶ 33.

[66] *Id*.

[67] *Id*.

[68] *Id*. ¶ 36. One foreman generally supervised each Herr Company work crew on each of the projects at issue in the amended Complaint. *Id*. at n. 1.

[69] *Id*. ¶ 38.

[70] *Id*.

[71] *Id*. ¶ 36. Herr Company's certified payrolls provided:

> [A]ny payrolls otherwise required under this contract required to be submitted for the above [weekly work] period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract[; and] that the classifications set forth therein for each laborer or mechanic conform to the work he [or she] performed.

> *Id*. ¶ 39.

[72] *Id*. ¶ 40.

[73] *Id*. ¶ 41.

[74] ECF Doc. No. 1; ECF Doc. No. 34 ¶¶ 12–13.

[75] ECF Doc. No. 34 ¶ 95.

[76] ECF Doc. Nos. 36, 37. The Union and Mr. Levan must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If the Union and Mr. Levan are unable to plead "enough facts to state a claim to relief that is plausible on its face," we should dismiss the complaint. *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz*

*LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id*. (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

Under Rule 12(b)(1), a defendant may move to dismiss a complaint based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction differs from a Rule 12(b)(6) motion to dismiss for failure to state a claim because a 12(b)(1) motion assesses the court's jurisdiction, whereas a 12(b)(6) motion assesses a claim's merits." *Spadoni v. Easton Area Sch. Dist.*, No. 07-5348, 2008 WL 2169525, at *4 (E.D. Pa. May 23, 2008). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.,* 462 F.3d 294, 302 n.3 (3d Cir. 2006).

[77] ECF Doc. Nos. 36, 37.

[78] ECF Doc. Nos. 38, 39.

[79] *U.S. ex rel. Windsor v. DynCorp, Inc*., 895 F. Supp. 844, 849 (E.D. Va. 1995).

[80] 31 U.S.C. § 3729(a)(1)(B).

[81] *United States ex rel. Jackson v. DePaul Health Sys.*, 454 F. Supp. 3d 481, 493 (E.D. Pa. 2020) (quoting *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 175 (3d Cir. 2019)).

[82] 40 U.S.C. § 3142(a)–(b).

[83] *United States ex rel. Int'l Bhd. of Elec. Workers, Loc. Union No. 98 v. Farfield Co*., No. 09-4230, 2017 WL 4269048, at *6, n. 11 (E.D. Pa. Sept. 26, 2017), *aff'd*, 5 F.4th 315 (3d Cir. 2021).

[84] *Id.*

---

[85] *Id.* at *6.

[86] *See e.g. DynCorp, Inc.*, 895 F. Supp. At 851; *Farfield*, 2017 WL 4269048, at *6; *Found. for Fair Contr., Ltd. v. G&M E. Contr., Inc.*, 259 F. Supp. 2d 329 (D.N.J. 2003).

[87] *Farfield Co.*, 2017 WL 4269048, at *4. Like in *Farfield*, the issue we face is not whether we have subject matter jurisdiction, which we do, but whether we must first refer this matter to the Department of Labor for resolution of the proper worker classifications. *Id.* at *4, n. 10.

[88] ECF Doc. Nos. 36, 37.

[89] ECF Doc. No. 38 at 15; *see also* ECF Doc. No. 39 at 11–24.

[90] *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 269 (E.D. Pa. 2020) (quoting *United States ex rel. Zwirn v. ADT Sec. Servs., Inc.*, No. 10-2639, 2014 WL 2932846, at *5 (D.N.J. June 30, 2014)).

[91] Rule 9(b) states" "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

[92] *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 157–58 (3d Cir. 2014). The United States Courts of Appeals for the Fourth, Sixth, Eighth, and Eleventh Circuits have held "a plaintiff must show 'representative samples' of the alleged fraudulent conduct, specifying the time, place, and content of the acts and the identity of the actors." *Id.* at 155. The United States Courts of Appeals for the First, Fifth, and Ninth Circuits "have taken a more nuanced reading of the heightened pleading requirements of Rule 9(b), holding that it is sufficient for a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id.*

[93] *Id.* at 157–58 (quoting *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 190 (5th Cir. 2009)).

[94] *U.S. ex rel. Knisely v. Cintas Corp.*, 298 F.R.D. 229, 237 (E.D. Pa. 2014) (internal citations omitted).

[95] *Knisely*, 298 F.R.D. at 237 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (*cited in In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

[96] *Id.* (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

[97] *Foglia*, 754 F.3d at 158.

[98] ECF Doc. No. 36-1 at 13–15, ECF Doc. No. 37-1 at 6–17.

[99] ECF Doc. No. 36-1 at 13.

[100] ECF Doc. No. 34 ¶¶ 96–98.

[101] *Id.* ¶ 13.

[102] *Id.* ¶¶ 60, 61, 83, 87.

[103] *Id.* ¶¶ 49, 73; *see U.S. ex rel. Int'l Bhd. of Elec. Workers, Loc. Union No. 98 v. Farfield Co.,* No. 09-4230, 2013 WL 3327505, at *14 (E.D. Pa. July 2, 2013), *aff'd sub nom.*, 5 F.4th 315 (3d Cir. 2021) ("Although Plaintiff does not provide many specific dates in the Amended Complaint, the 'when' is adequately alleged the FCA violations occurred. These violations occurred from 2001 to 2009.").

[104] *United States ex rel. v. Merck-Medco Managed Care, L.L.C.*, 336 F. Supp. 2d 430, 437 (E.D. Pa. 2004).

[105] ECF Doc. No. 34 ¶¶ 49, 73; *see also Farfield* 2013 WL 3327505, at *14 ("Plaintiff alleges the 'where' by identifying that the fraud took place during specific government projects including Wayne Junction, Smart Station, PAT CO, and Girard Project.").

[106] ECF Doc. No. 34 ¶¶ 49, 73.

[107] *Id.* ¶ 83.

[108] *Id.* ¶¶ 57, 61(e), 83, 87(e), 99.

[109] *Id.* ¶ 10.

[110] ECF Doc. No. 37-1 at 7–12.

[111] *Id.* at 8 (quoting 29 C.F.R § 5.5(a)(6)).

[112] 31 U.S.C.A. § 3729(a)(1)(B).

[113] *U.S. ex rel. Wall v. Circle C Const., L.L.C.*, 697 F.3d 345, 356 (6th Cir. 2012) (internal citations omitted).

[114] ECF Doc. No. 34 ¶¶ 99–100.

[115] *Id.* ¶¶ 13, 99.

[116] *Id.* ¶ 100.

[117] ECF Doc. No. 37-1 at 12.

[118] *Id.* at 12–13.

[119] ECF Doc. No. 39 at 21–24.

[120] *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 182 (2016) (quoting § 3729(b)(1)(A)).

[121] ECF Doc. No. 34 ¶ 61.

[122] *Id.* ¶ 87.

[123] *Phone-Tel Commc'ns, Inc. v. AT&T Corp.*, 100 F. Supp. 2d 313, 315 (E.D. Pa. 2000) ("The doctrine of primary jurisdiction applies 'to claims properly cognizable in court that contain some issue within the special competence of an administrative agency.'") (quoting *Reiter v. Cooper*, 507 U.S. 258 (1993)).

[124] *Farfield*, 2013 WL 3327505, at *5 (E.D. Pa. July 2, 2013) ("The issue as to whether this Court has jurisdiction over Plaintiff's claims concerns whether the claims' false or fraudulent nature would require the court to decide a matter committed to the discretion of an administrative agency.")

[125] *Farfield*, 2017 WL 4269048, at *5 (quoting *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010)); *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1105 (3d Cir. 1995) (primary jurisdiction applies where "the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute.") (internal quotations and citations omitted)).

[126] *Baykeeper v. NL Indus. Inc.*, 660 F.3d 686, 961 (3d Cir. 2011) (quoting *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).

[127] *Id.* (quoting *W. Pac. R.R. Co.*, 352 U.S. at 64).

[128] *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 759 (9th Cir. 2015)).

[129] *Erie Ins. Exchange ex rel. Beltz v. Stover*, 619 F. App'x 118, 121 (3d Cir. 2015) (quoting *U.S. v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963)).

[130] *Phone-Tel Commc'ns, Inc.*, 100 F. Supp. 2d at 322.

[131] *Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993).

[132] *Loc. Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Jewel Tea Co.*, 381 U.S. 676, 686, 85 S. Ct. 1596, 1600, 14 L. Ed. 2d 640 (1965).

[133] *Astiana*, 783 F.3d at 760.

[134] *Id.* at 761.

[135] *Id.* at 760.

[136] *Baykeeper*, 660 F.3d at 691 (internal citations omitted).

[137] *Farfield*, 2017 WL 4269048, at *5 (citing *Wall*, 697 F.3d at 352 (reversed on other grounds)).

[138] *U.S. ex rel. Lambert v. Elliott Contracting, Inc.*, No. 13-1106, 2015 WL 1097381, at *8 (S.D.W. Va. Mar. 11, 2015).

[139] *DynCorp, Inc.*, 895 F. Supp. at 849–51.

[140] *Id.*

[141] *Id. at* 853.

[142] *Farfield*, 2013 WL 3327505, at *7.

[143] *Id.*

[144] *Farfield*, 2017 WL 4269048, at *4.

[145] *Id.* at *6.

[146] *Id.* at *7.

[147] *Id.*

[148] *Id.* at *8.

[149] *United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 389 F. Supp. 3d 275, 280 (E.D. Pa. 2019), *aff'd*, 5 F.4th 315 (3d Cir. 2021).

[150] *Id.* at 281.

[151] *Id.*

[152] *Id.* at 281–82 (emphasis added).

[153] *Id.* at 283–89.

[154] *United States ex rel. IBEW Local Union No. 98 v. Farfield Co.,* 5 F.4th 315, 351 n.31 (3d Cir. 2021) ("So to the extent that we must independently assure the existence of subject-matter jurisdiction, we conclude that the District Court had jurisdiction to adjudicate the applicable worker classifications after it referred the case to the Department and the Department declined the referral.").

[155] ECF Doc. No. 36-1 at 4, 7–16; ECF Doc. No. 37-1 at 17–20.

[156] ECF Doc. No. 38 at 11–14; ECF Doc. No. 39 at 9–11.

[157] ECF Doc. No. 38 at 11–14; ECF Doc. No. 39 at 9–11.

[158] ECF Doc. No. 34 ¶ 5.

[159] ECF Doc. No. 38 at 11–14; ECF Doc. No. 39 at 9–11.

[160] ECF Doc. No. 38 at 13.

[161] *Id*. at 14.

[162] *Id*.

[163] *Farfield*, 389 F. Supp. 3d at 281–82 (emphasis added).

[164] ECF Doc. No. 38 at 14 (emphasis added).

[165] *Reiter*, 507 U.S. at 268–69.

[166] *Elliott Contracting, Inc*., 2015 WL 1097381, at *10 ("After a court has determined that an agency should exercise primary jurisdiction over a claim, the court must determine further whether to stay the proceedings or dismiss the claim without prejudice.").

[167] *Id*. (quoting *Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993)).

[168] *Id*. (citing 31 U.S.C. § 3731(b)(1)).

[169] ECF Doc. No. 34 ¶ 49.

[170] *Farfield Co*., 5 F.4th at 352.

[171] *Astiana*, 783 F.3d at 760.